# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **REBECCA JONES,**<br>*on behalf of* Mackarius Jones<br><br>        Plaintiff,<br>    v.<br><br>**NANCY A. BERRYHILL,**[1]<br>Commissioner of Social Security,<br><br>        Defendant. | Case No. 3:16-cv-931-SI<br><br>**OPINION AND ORDER** |

Bruce W. Brewer, PO Box 421, West Linn, OR 97068. Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hébert, Assistant United States Attorney; United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Jeffrey E. Staples, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-2240. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Rebecca Jones, on behalf of her minor son, Mackarius Jones, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Because the Commissioner's decision was not based on the proper legal standards and the findings were not supported by

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

substantial evidence, the decision is REVERSED and this case is REMANDED for further proceedings.

## STANDARD OF REVIEW

A district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Molina v. Astrue*, 673 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* at 1110-11 (quotation omitted). The Court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.* at 1110. The Court may not substitute its judgment for that of the Commissioner. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

**A.      Plaintiff's Application**

Ms. Jones filed her child's application for SSI in December 2011, alleging disability as of September 6, 2011. AR 41. Born in 2009, Mackarius Jones was two years old on the date of his application for benefits. AR 44. Ms. Jones alleges disability on behalf of her child due to attention deficit hyperactivity disorder ("ADHD"). The Commissioner denied her application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). AR 41. After an administrative hearing, the ALJ found Ms. Jones's child not disabled in a decision dated November 13, 2014. AR 53. The Appeals Council denied Ms.

Jones's subsequent request for review on March 22, 2016. AR 1-4. The ALJ's decision thus became the final decision of the Commissioner, and Ms. Jones sought review in this Court.

**B.     The Sequential Analysis**

A child claimant under the age of 18 is disabled if he or she is can demonstrate "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Pursuant to 20 C.F.R. § 416.924(a), child disability claims are assessed according to a three-step sequential evaluation process:

1.  Is the child performing "substantial gainful activity?" 20 C.F.R. § 416.924(b). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 416.910. If the child is performing such work, he is not disabled within the meaning of the Act. 20 C.F.R. § 416.924(b). If the child is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the child's medically determinable impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 416.924(c). An impairment or combination of impairments is "severe" if it is more than "a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations[.]" *Id.* If the claimant has a medically determinable severe impairment, the analysis proceeds to step three.

3.  Does the child's severe impairment "meet, medically equal, or functionally equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? "An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings. 20 C.F.R. § 416.924(d). If so, then the child is disabled. *Id.* 20 C.F.R. § 416.924(d). If the impairment does not meet, or medically or functionally equal, one or more of the listed impairments, or does not meet the duration requirement, the child is not disabled under the Act. 20 C.F.R. § 416.924(d)(2).

If the child has "a severe impairment or combination of impairments that does not meet or medically equal any listing, [the Commissioner] will decide whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). In assessing how the child's functioning is affected in all of the child's activities, the following six domains are considered: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926(b)(1). In order to "functionally equal" any listing, the "impairment(s) must be of listing-level severity; *i.e.*, it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain[.]" 20 C.F.R. § 416.926a(a). A "marked" limitation is one that "interferes seriously with your ability to independently initiate, sustain, or complete activities . . . the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is one that "interferes very seriously with your ability to independently initiate, sustain, or complete activities . . . the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." 20 C.F.R. § 416.926a(e)(3)(i).

C.     **The ALJ's Decision**

The ALJ performed the sequential analysis. As a threshold matter, the ALJ found Ms. Jones's son, Mackarius, was born May 4, 2009, and therefore was an "older infant" on the date of the application for benefits. AR 44. At step one, the ALJ found the child had not engaged in substantial gainful activity since the date of the application. *Id.* At step two, the ALJ determined Ms. Jones's son had the severe impairment of ADHD. *Id.* At step three, the ALJ found the

impairment did not meet, medically equal, or functionally equal a listed impairment. AR 45-53. Specifically, the ALJ found the child: (1) had less than a marked limitation in acquiring and using information; (2) no limitation in attending and completing tasks; (3) less than a marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) less than a marked limitation in caring for himself; and (6) less than a marked limitation in health and physical well-being. *Id.* Accordingly, the ALJ found Ms. Jones's child was not disabled. AR 53.

## DISCUSSION

Ms. Jones contends the Commissioner made the following legal errors in evaluating this case: (1) erroneously determining new evidence submitted to the Appeals Council and made part of the administrative record did not pertain to the relevant adjudicatory period; (2) erring in finding the impairment at issue did not functionally equal the severity of one of the listings; and (3) failing to provide adequate reasons to reject her lay testimony.

**A.    New Evidence**

Ms. Jones submitted new evidence in June 2015, several months after the ALJ's November 2014 non-disability decision. AR 375-79. The evidence became part of the official administrative record when it was considered and incorporated by the Appeals Council; however, the Appeals Council determined the evidence did not relate to the period adjudged by the ALJ, and affirmed the non-disability decision without reviewing the specific merits of the evidence. AR 2. Ms. Jones assigns error to the Commissioner's rejection of the new evidence, an attorney-generated questionnaire signed by Ayla Terry-Mitchell, CSWA/QMHP [clinical social worker associate/qualified mental health professional].

As a threshold matter, this Court has no jurisdiction to review the actions of the Appeals Council because the Appeals Council decision is a non-final agency action. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). When the Appeals Council declines a substantive review, the ALJ's decision, rather than the Appeals Council's, becomes "the final decision of the Commissioner," which the Court may review for substantial evidence and proper legal standards. *Id.*; *Tackett*, 180 F.3d at 1097. In *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012), the Ninth Circuit held that when a district court reviews an ALJ decision, the review should include the entire record, including evidence that was not before the ALJ but later became part of the record when it was incorporated by the Appeals Council. Accordingly, the parties' arguments about whether the Appeals Council provided sufficient reasoning not to review the new evidence are moot.[2] *See* Pl.'s Br. 4-5; Def.'s Br. 6-7.

Instead, because the new evidence is part of the administrative record, the Court must review the ALJ's decision based on the record as a whole, and determine if the additional evidence "provide[s] a basis for changing the hearing decision." *Brewes*, 682 F.3d at 1162 (quoting *Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993)). In support of affirming the ALJ's decision, the Commissioner relies upon the Appeals Council's argument that Ms. Terry-Mitchell's questionnaire, signed June 18, 2015, does not relate to the adjudicative period on or before November 13, 2014, the date of the ALJ's decision. Def.'s Br. 6-7; *see* AR 379. Specifically, the Commissioner contends, "Ms. Terry-Mitchell makes no mention of when she began treating Plaintiff's son, nor does she explain if her statements about the functional limitations related to the period adjudicated by the ALJ." Def.'s Br. 7. Although the

---

[2] This ruling includes Ms. Jones's alternative argument that the Appeals Council erred by failing to apply Social Security Ruling ("SSR") 06-03p, *available at* 2006 WL 2329939, to the new evidence. Pl.'s Br. 4-5.

questionnaire does not specify when she began treating Ms. Jones's child, Ms. Terry-Mitchell did indicate she was the boy's "primary mental health care provider," and that she had reviewed the ALJ's written decision.[3] AR 376.

Although Ms. Terry-Mitchell's observations do not explicitly reference a time period, the summaries she endorsed largely mirror another assessment from Morrison Child and Family Services that was completed in October 2013 by a different clinician, Ginger Hemming. AR 369-74. For example, Ms. Terry-Mitchell endorsed "processing issues" and difficulty word-finding, which caused "limitations in acquiring and using information." AR 377. Those observations are consistent with the October 2013 intake, which noted "special education services," "speech and language delays," and "significant delays" in expressive language. AR 371, 374. The observations are also consistent with an earlier 2011 evaluation report by Portland Public Schools, which found significant delays in receptive and expressive language. AR 200. Symptoms endorsed by Ms. Terry-Mitchell's were also consistent with a 2014 screening assessment; this document noted "a history of developmental delays (cognitive and speech and language) which also impact his functioning and interactions with others," as well as "developmental lag." AR 366. Moreover, the statement endorsed by Ms. Terry-Mitchell implies that the ALJ misinterpreted that the developmental delay was not ongoing, which suggests that the limitation existed prior to the ALJ's decision, and persisted at least through June 2015. AR 377.

Ms. Terry-Mitchell further indicated that Ms. Jones's child had marked limitations in interacting and relating with others. AR 378. By way of example, the questionnaire summarizes

---

[3] "[D]epending on the particular facts of a case . . . an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source[.]" SSR 06-03p, at *5.

that despite the ALJ's finding that incidents of violence at home "did not appear to be a pattern of behavior" because he was not aggressive at school, Ms. Terry-Mitchell found the characterization of the child's limitations "grossly understate[d]." AR 378. The questionnaire describes the child's history of tantrums at school, running from classrooms, not engaging in age-appropriate play with peers, and a pattern of aggressive behavior at home, including cutting siblings with sharp objects and killing the Jones family's pet rabbit. *Id.* Although it is *possible* that the school issues described arose only in the time period between November 2014 and June 2015, the behaviors described are consistent with the record as a whole. The depictions of home violence clearly reference incidents described elsewhere in the record and in the ALJ's decision, and therefore directly relate to the adjudicatory period. *See, e.g.*, AR 46, 50.

Ms. Terry-Mitchell also indicated limitations in attending and completing tasks, moving about and manipulating objects, personal self-care, and health and well-being. AR 377-79. The summaries, however, encapsulated in the corresponding sections of the questionnaire are somewhat more ambiguous as to the time period to which they refer. For example, the questionnaire indicates that Ms. Jones's child's "inattention at school is mitigated by 'significant, exceptional individual support'" and recounts some of Ms. Terry-Mitchell's experiences with the child in family therapy sessions. AR 377. Although the observations may also relate to the relevant time period, it appears those passages are descriptions of the child in June 2015. Similarly, discussing Ms. Jones's son's asthma, Ms. Terry-Mitchell indicated that she was "aware of incidents of treatment through the Emergency Department" in each month from November 2014 through March 2015. AR 379. Further, although some of these issues may have preceeded November 2014, it also appears that Ms. Terry-Mitchell predominantly was addressing asthma incidents after the decision date. *Id.* Nevertheless, there is also an indication

that the child's various health issues were longstanding, as Ms. Terry-Mitchell noted that his "behavioral and attention deficit issues cannot be understood solely in terms of his 'hyperactivity' but also in relation to the harm he suffered both as a fetus and as a premature birth." *Id.*

Accordingly, the Court finds that, at the very least, the questionnaire signed by Ms. Terry-Mitchell pertains to the relevant time period as to Ms. Jones's child's limitations in acquiring and using information, and interacting and relating with others. Further, it is not clear that Ms. Terry-Mitchell's questionnaire is inconsequential to the Commissioner's final non-disability decision. If an ALJ were to accord significant weight to her observations, the testimony supports a finding of marked limitations in at least two functional domains, which could direct a finding of disabled. 20 C.F.R. § 416.921a(a). Therefore, the Court cannot conclude that an ALJ would have reached the same non-disability decision if the evidence had been considered. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Thus, it is plausible that the testimony provided in the questionnaire could provide a basis for changing the Commissioner's ultimate determination. *Brewes*, 682 F.3d at 1163.

The Commissioner maintains that, even assuming the questionnaire refers to the adjudicatory period, Ms. Jones has failed to demonstrate that the new evidence provides a basis for changing the ALJ's decision. Def.'s Br. 8-9. In support, the Commissioner argues that the ALJ's findings "remain supported by substantial evidence" and that Ms. Terry-Mitchell's statements "merely disagree[] with the ALJ's findings . . . [and] are conclusory and without citation to any objective clinical findings." *Id.* The argument is not persuasive. The questionnaire's passages, each affirmed by Ms. Terry-Mitchell, provided a brief but adequate explanation for the bases of the opinions expressed, and also referenced specific portions of the

medical record that was before the ALJ. The Commissioner further argues that the medical record does not contain any treatment notes signed by Ms. Terry-Mitchell, negating the import of her opinions. Def.'s Br. 8. The Commissioner's argument goes to the issue of the probative weight of Ms. Terry-Mitchell's assessment. An ALJ, however, rather than this Court, is the proper authority to weigh the medical and testimonial evidence. *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Accordingly, remand is required to properly evaluate Ms. Terry-Mitchell's written statements.

**B.     Functional Equivalence**

Ms. Jones argues that the ALJ erred in finding that her child did not have marked limitations in the domains of "acquiring and using information," "attending and completing tasks," and "interacting and relating with others." Pl.'s Br. 8-13. Ms. Jones asserts that the evidence before the ALJ at the time of his decision should have directed a finding of at least "marked" limitations in the functional domains identified. At step three of the child disability analysis, marked limitations in two of the six functional domains – or an "extreme" limitation in one – directs a finding that a child's condition is functionally equal to one of the listings, and therefore disabled under the Act. 20 C.F.R. § 416.926a(e)(2)(i). As noted previously, an impairment is considered marked if it "seriously interferes with [a person's] ability to independently initiate, sustain, or complete activities." *Id.* The ALJ found "less than marked" limitations in "acquiring and using information" and "interacting and relating with others" and "no limitation" in attending and completing tasks."

For the domain of "acquiring and using information," the ALJ found that Ms. Jones's child had less than a marked limitation, noting that his receptive and expressive language scores were 1.5 and 1.67 standard deviations below the mean, that he could initiate two-word phrases

when prompted, that he could name pictures in books and ask for things he wanted, and that "his cognitive skill delays were likely the result of communication delays." AR 48. The Commissioner argues that because the child's standardized score was less than two standard deviations below the mean and that the ALJ considered the record as a whole, the ALJ's finding was valid. Def.'s Br. 10-11.

Although a child will be found to have a marked limitation when the relevant standardized tests are two standard deviations or more below the mean, it is not the only criterion for establishing marked limitations; indeed, an ALJ may "not rely on any [single] test score alone." 20 C.F.R. § 416.926a(e)(4)(i). An ALJ must "consider your test scores together with the other information we have about your functioning, including reports of classroom performance and the observations of school personnel and others." 20 C.F.R. § 416.926a(e)(4)(ii). Thus, in further support for the less than marked finding, the ALJ noted that Ms. Jones's child could initiate a two-word phrase with prompting, and name pictures in books. AR 48. Ms. Jones argues that the ALJ's findings are not persuasive, because the child could only use a two-word phrase with "max cueing," and can name objects in pictures, but only with non-specific vocabulary, such as "cow" when identifying any animal, and using "chicken" for any type of meat. Pl.'s Br. 9; AR 174. It appears, however, the ALJ accurately determined there had been some improvement, as between March 2012 and April 2012, the child's vocabulary increased, he could name "some" pictures in books. AR 48, 174. Accordingly, although the ALJ's findings were quite brief and likely susceptible to more than one rational interpretation, there is no clear error as to the ALJ's assessment of the evidence that was before him at the time of his written decision. *Holohan v. Massanari*, 246 F.3d 1195, 2001 (9th Cir. 2001).

Because the administrative record has since been supplemented by the opinion of his treating therapist, however, the ALJ's finding cannot be said to be based on the record as a whole. Indeed, Ms. Terry-Mitchell opined that, despite recent improvement, Ms. Jones's child continues to have marked limitations in "acquiring and using information." AR 377. As noted above, Ms. Terry-Mitchell's observations are substantially consistent with other evidence of record reflecting significant delays and limitation in communication. *See* AR 200, 366, 367, 374. Further, because the Court cannot determine whether the ALJ would have arrived at the same conclusion after considering Ms. Terry-Mitchell's statement regarding this functional domain, remand is required.

Ms. Jones also contends that ALJ erred by failing to find marked limitations in the domain of "attending and completing tasks." In support of his finding, the ALJ noted that Ms. Jones's child was tested in 2012 and was observed to have the capacity to "attend to an activity for three minutes, find hidden objects, nest objects, match colors and shapes, and complete a puzzle." AR 49, 176. The ALJ additionally found the child was "described as doing well in school" and seemed to respond well to structured environments. AR 49, 366.

In arguing that the ALJ erred in assessing the domain of "attending and completing tasks," Ms. Jones argues that the opinions of two examining psychologists were "completely disregard[ed]." Pl.'s Br. 11-12. The ALJ noted that the report in question "provided treatment recommendations but the evaluation contains no observations of the claimant's current functioning and limitations." AR 46 (citing AR 365-68). Review of the 2014 report completed by Kristen Marcaly, Psy.D., and Colleen Scott, Psy.D., reveal that the ALJ's statement is not completely accurate. Although the assessment did not include a residual functional capacity ("RFC")-type assessment, it did contain observations of Ms. Jones's child's functioning and

limitations. For example, the doctors noted that the child "has a history of developmental delays (cognitive speech and language) which also impact his functioning and interactions with others;" has "problems with inattention, hyperactivity, and impulsivity at school;" "'appears wiggly and unfocused' and . . . has difficulty keeping his body under control;" "presents as dysregulated, impulsive, hyperactive, and aggressive;" and "requires a high level of supervision." *See* AR 366-67. Thus, the ALJ's rationale for rejecting the assessment is not supported by the record. Similarly, the Commissioner's argument that the opinions of Drs. Marcally and Scott "offered only treatment recommendations, rather than medical opinions," is not supported by substantial evidence. *See* Def.'s Br. 12-13 (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)). Accordingly, to the extent the assessment of Drs. Marcaly and Scott provides observations of Ms. Jones's child's functioning and limitations regarding *all* of the six domains, that evidence should be properly considered on remand.

To the extent Ms. Jones argues that the ALJ's error necessitates a finding of marked limitation in attention and concentration, that argument is not persuasive. As noted above, the proper arbiter of the weighing of medical evidence is an ALJ, not the Court. Because this case independently requires remand for proper consideration of the questionnaire completed by the treating therapist, the proper course is to direct the ALJ additionally to consider the observations set forth by Drs. Marcaly and Scott, or provide legally adequate rationales for rejecting the assessment.

Finally, Ms. Jones argues the Court should find her son has at least marked limitations in the domain of "interacting and relating with others." Pl.'s Br. 12-13. The ALJ, however, noted that in April 2012, the child was observed to have "age level skills" in the "social or emotional" development area. AR 50, 176. Accordingly, although Ms. Jones offers an alternative

interpretation of the record based on her own citations to the record, the ALJ's finding was reasonable and supported by the record that was available to the ALJ at the time of the decision. *Holohan*, 246 F.3d at 1201. Bcause the questionnaire statements endorsed by treating therapist Ms. Terry-Mitchell suggest that Ms. Jones's child's limitations in the domain are marked, further proceedings are necessary to resolve the apparent conflict of opinion. Specifically, Ms. Terry-Mitchell indicated stark disagreement with the ALJ's characterization of the child's behavior and patterns of personal interactions at school. AR 378. On remand, the ALJ will have the best opportunity to situate the questionnaire responses by Ms. Terry-Mitchell in the context of the overall record and weigh the evidence accordingly.

**C.     Lay Testimony**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical

evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Ms. Jones argues that the ALJ erred by rejecting without comment Ms. Jones's testimony about the severity and functional limitations arising from her child's ADHD. Pl.'s Br. 13-14. As the Commissioner demonstrates, however, the ALJ summarized Ms. Jones's allegations, and provided reasons why he did not find her statements fully credible. Def.'s Br. 14-16; AR 46. Accordingly, the reasons proffered by the ALJ met the requisite legal standard. *Molina*, 674 F.3d at 1114.

### D. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100.

Although the ALJ's findings include legal error and the questionnaire completed by the treating therapist was submitted after the ALJ's decision, the Commissioner's ultimate determination was not based on substantial evidence. As explained above, however, the Court finds that further proceedings are necessary appropriately to consider the complete record and properly weigh the relevant evidence.

Additionally, the Court notes that although the ALJ indicated he would need a thorough psychological examination in order to properly decide this matter, the ALJ rejected the 2014 assessment screening completed on July 6, 2014. AR 46, 69 ("That's the only way I can decide this case."), AR 365-68. Moreover, the ALJ noted that the available treatment records were "minimal and sporadic." AR 46. Accordingly, to the extent it is practicable, considering that Ms. Jones's child is now eight years old, the Commissioner should consider obtaining a new psychological evaluation of the child's functional limitations during the relevant time period.

## CONCLUSION

The Commissioner's decision that Ms. Jones's child was not disabled is not based on proper legal standards, and the findings are not supported by substantial evidence. Thus, Ms. Jones's request for remand (ECF 1) is GRANTED. The Commissioner's decision is REVERSED and this case REMANDED for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 27th day of October, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge